# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LINDA LUZIER, | ) |
| | ) |
|         Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 10-1186-JWL |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|         Defendant. | ) |
| _____ | ) |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding error as alleged by Plaintiff in the administrative law judge's (ALJ's) decision, the court ORDERS that the Commissioner's decision is REVERSED, and that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

## I. Background

Plaintiff applied for DIB on June 9, 2004 alleging disability since January 1, 2001. (R. 15, 61-63). The application was denied initially and upon reconsideration, and

Plaintiff requested a hearing before an ALJ. (R. 15, 25-26, 36-37). Plaintiff's request was granted, and Plaintiff appeared with counsel and testified at a hearing before ALJ Robert J. Burbank on November 27, 2007. (R. 38-46, 386-406). Steven Benjamin, a vocational expert who had prepared a report regarding Plaintiff's work history, appeared at the hearing, but did not testify. (R. 15, 83, 386). On February 19, 2008, ALJ Burbank issued a decision in the case, finding that Plaintiff's date last insured for disability benefits was December 31, 2006, that her allegations of symptoms resulting from her impairments are not entirely credible, that she has the residual functional capacity (RFC) for a full range of sedentary work, and that she is capable of performing her past relevant work as a nurse consultant. (R. 15-24). Therefore, he concluded Plaintiff is not disabled within the meaning of the Act, and denied her application for benefits. (R. 24). Plaintiff sought, but was denied Appeals Council review of the hearing decision. (R. 6-11). Therefore, the ALJ's decision is the final decision of the Commissioner. (R. 6); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review of that decision. (Doc. 1).

## II.  Legal Standard

The court's jurisdiction and review are guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1051-52 (10th Cir. 2009) (citing 42 U.S.C. § 405(g)). Section 405(g) of the Act provides that, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied

the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her

3

age, education, and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. § 404.1520 (2007); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment, and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. If claimant's impairment(s) does not meet or equal a listed impairment, the Commissioner assesses her RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform her past relevant work, and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (citing Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea, 466 F.3d at 907; accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the

burden shifts to the Commissioner to show jobs in the economy within Plaintiff's capability. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). This case was decided at step four, so the burden was at all times on Plaintiff.

Plaintiff claims the ALJ erred in several respects. She claims the ALJ's credibility analysis was insufficient, and that he committed three errors in assessing RFC: (1) providing an insufficient narrative statement which failed to adequately relate the evidence to the RFC assessed; (2) failing to state the weight accorded the state agency physicians' opinions, and attempting to assess RFC limitations without securing specific medical opinions (which provided work limitations) from treating or examining medical sources; and (3) failing to consider the effects of Plaintiff's non-severe impairments of depression and osteoarthritis in assessing RFC. Finally, Plaintiff claims the ALJ erred in his step four determination because he failed to make specific on-the-record findings regarding phase two or phase three of his step four analysis.

The Commissioner argues that the ALJ properly considered the severity of Plaintiff's complaints, and that record evidence supports the finding that Plaintiff's depression is not severe. He argues that substantial evidence supports the ALJ's RFC assessment, including the finding that Plaintiff's allegations were not credible, and supports the ALJ's reliance upon the opinions of the state agency physicians because there are no conflicting opinions from treating physicians. In his final argument, the Commissioner asserts that the ALJ performed a proper step four analysis when he

effectively relied upon the vocational expert's report in support of his phase two and phase three findings.

The court finds that remand is necessary because the ALJ erred in his narrative discussion of the RFC assessment (1) by failing to relate the evidence to the RFC, (2) by failing to explain the weight accorded to the medical opinions, and (3) by failing to demonstrate that he considered the effects of osteoarthritis in assessing RFC. Since remand is necessary because of these errors, the court will not address Plaintiff's remaining arguments regarding credibility or the ALJ's step four determination. Plaintiff may make those arguments to the Commissioner on remand.

## III.    RFC Assessment

### A.    The ALJ's Findings

In his step two analysis, the ALJ found that Plaintiff has obesity and degenerative disc disease of the lumbar spine, impairments which, in combination, are severe, because they have more than a minimal effect on Plaintiff's ability to perform basic work-related activities. (R. 18). He recognized that Plaintiff's depression is a medically determinable impairment, but found that it is not severe within the meaning of the Act. Id.

The ALJ assessed Plaintiff with the RFC "to perform the full range of sedentary work." (R. 19) (emphasis added). In the decision, the ALJ summarized the RFC assessment for a range of sedentary work as opined by the state agency physicians, but noted that their opinion was formulated before Plaintiff's back surgery and subsequent weight loss, and stated that the RFC for the full range of sedentary work as assessed in the

6

hearing decision "is supported by the medical evidence of record." Id. Thereafter, he summarized the medical evidence generally and Plaintiff's specific allegations regarding symptoms resulting from her impairments. (R. 19-22). He found that Plaintiff's allegations of symptoms "are not entirely credible," and explained his reasons for making that finding. (R. 22-23). Then, in a single sentence, the ALJ concluded:

> After a thorough review of the evidence of record, including the claimant's allegations and testimony, forms completed at the request of Social Security, the objective medical findings, medical opinions, and other relevant evidence, the undersigned finds the claimant capable of performing work consistent with the residual functional capacity established in this decision.

(R. 23).

### B.     The Applicable Standard

The Commissioner has promulgated regulations regarding assessment of RFC. 20 C.F.R. § 404.1545-1546. In assessing RFC, the Commissioner is to consider a claimant's abilities to meet the demands of work despite her impairment(s). Id. at § 404.1545; Social Security Ruling (SSR) 96-8p, West's Soc. Sec. Reporting Serv., Rulings 144 (Supp. 2010). The assessment is to be based upon all relevant medical and other evidence in the record and is to include consideration of the limitations caused by all of the claimant's medically determinable impairments, including impairments which are not "severe" as defined in the regulations. Id. at § 404.1545(a & e); SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 147-48 (Supp. 2010). The assessment is to consider physical abilities such as sitting, standing, walking, lifting, carrying, pushing, pulling,

reaching, handling, stooping, and crouching; mental abilities such as understanding, remembering, and carrying out instructions, and responding appropriately to supervision, co-workers, and work pressures; other abilities such as hearing and seeing; and the ability to tolerate various work environments. Id. § 404.1545(b,c,d); SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 148-49 (Supp. 2010); see also § 404.1521 (listing examples of basic work activities which may be affected by impairments). At the ALJ hearing level of review, it is the ALJ's responsibility to assess RFC. Id. § 404.1546(c).

The Commissioner issued SSR 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits." West's Soc. Sec. Reporting Serv., Rulings 143 (Supp. 2010). That ruling includes narrative discussion requirements for an RFC assessment. Id. at 149. The discussion is to cite specific medical facts and nonmedical evidence to describe how the evidence supports each conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform. Id. The discussion must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved. Id. It must include consideration of the credibility of plaintiff's allegations of symptoms. Id. at 149-50.

The narrative discussion must include consideration of medical source opinions regarding plaintiff's capabilities. Id. at 150. If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why he did not adopt the opinion. Id. at

8

150.  Opinions from any medical source must never be ignored, and will be evaluated by the Commissioner in accordance with factors contained in the regulations.  20 C.F.R. § 404.1527(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2010).  All evidence from nonexamining sources such as state agency consultants is considered opinion evidence.  20 C.F.R. § 404.1527(f).  ALJ's are not bound by the opinions of state agency consultants but must consider them; such opinions must be evaluated using the regulatory factors, and the ALJ must explain in the decision the weight given to them.  Id., § 404.1527(f)(2)(i & ii).

### C.  Analysis

Like the state agency consultants, the ALJ found that Plaintiff is able to perform sedentary work.  However, the ALJ determined Plaintiff is able "to perform the full range of sedentary work" (R. 19), whereas the state agency consultants found limitations in the range of sedentary work of which Plaintiff is capable.  Different than the RFC assessed by the ALJ, the consultants found Plaintiff was limited to lifting and/or carrying only four to five pounds frequently (R. 246); she could never climb ladders, ropes, and scaffolds (R. 247); and she must avoid concentrated exposure to extreme cold, or to vibration.  (R. 249); see also (R. 252) (Dr. Berner's opinion was "affirmed as written" by Dr. Legler).

From these facts, it is apparent that although the ALJ relied in part on the medical opinion of the state agency consultants, he did not adopt it.  But, he did not explain why.  The only discussion of the state agency consultants' opinion in the ALJ's decision was his acknowledgment that the "consultants provided a physical residual functional capacity

9

assessment for a range of sedentary work in 2004," but that in 2005 Plaintiff underwent a laminectomy with fusion, and in 2007 "her weight was down to 200 pounds and her back pain was rated at a '2' currently, on a scale of 0 to 10."  (R. 19) (citing Exs. 8F, 12F (R. 198-211, 245-54)).[1]

The Commissioner characterizes this summary as the ALJ's indication "that the medical consultants did not have access to more recent records showing the beneficial results of Plaintiff's weight loss and laminectomy."  (Comm'r Br. 8).  While the Commissioner's characterization might be a reasonable explanation for the ALJ's findings, it does not account for the ALJ's finding that Plaintiff's date last insured was December 31, 2006 (R. 15), and the ALJ's acknowledgment both that Plaintiff weighed 302 pounds on December 27, 2006 (four days before her date last insured and six months before her weight was recorded as 200 pounds) (R. 21), and that she weighed 275 pounds at the time of the hearing (nearly a year after her date last insured and only six months after her weight was recorded as 200 pounds).  (R. 22).  More importantly, the Commissioner's characterization is not the ALJ's explanation for his findings.  The court may not affirm a decision on the basis of appellate counsel's post hoc rationalizations for

---

[1]The court notes that the "E" and "F" exhibits in this case ("Disability Related Development and Documentation," and "Medical Records") are arranged in the administrative record in reverse numerical order, although they are listed in the "List of Exhibits" in numerical order.  No reason is given for this unusual arrangement.  Consequently, Exhibit 12F appears in the administrative record before Exhibit 8F.  Because of the inconvenience of this arrangement, the court is exceedingly happy that the page numbering within each exhibit was not also reversed.

agency action. Knipe, 755 F.2d at 149 n.16. Nor may the court create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005). While it is apparent from the decision that the ALJ relied upon the back surgery and the weight loss to discount the opinions of the state agency consultants, what is not apparent from the decision is the actual weight accorded to the consultants' opinions or the effect on the ALJ's determination caused by the timing of the rapid weight loss and rapid weight gain relative to Plaintiff's date last insured.

Moreover, the beneficial results of Plaintiff's laminectomy or of her weight loss and subsequent weight gain, are ambiguities and material inconsistencies in the evidence which it is the duty of the ALJ to resolve, and for which SSR 96-8p requires him to provide an explanation regarding how they were considered and resolved in his narrative discussion. West's Soc. Sec. Reporting Serv., Rulings 149 (Supp. 2010). The ALJ did not state the weight he accorded the consultants' opinion, did not explain why he did not adopt the opinion, and did not explain how he resolved the ambiguities and material inconsistencies This is error necessitating remand for a proper narrative discussion as required by SSR 96-8p.

Plaintiff's argument also implies that an RFC assessment may only be derived from functional limitations specifically opined by treating medical sources or from detailed evaluations by consulting medical sources. (Pl. Br. 10-11) (citing Fleetwood v. Barnhart, 211 F. App'x 736, 740 (10th Cir. 2007)). That is not the law, and it is not the

11

holding of Fleetwood. Although Plaintiff is correct that RFC assessment forms completed by nonexamining consultants, and which "are not accompanied by 'thorough written reports or persuasive testimony' . . . [are] not substantial evidence," (Pl. Br. 10) (quoting Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987)), that is not the case here. Both Dr. Berner and Dr. Legler provided a written report explaining the rationale for his opinion. (R. 252-53). Moreover, an RFC assessment is to be "based on all of the relevant medical and other evidence" in the case record. 20 C.F.R. § 405.1545(a)(3) (emphases added); see also West's Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2010) ("The RFC assessment must be based on all of the relevant evidence in the case record"). It is the ALJ's responsibility to consider the evidence and to perform the RFC assessment. Id. at § 405.1546(c). The Fleetwood opinion does not require a different result. There, the court stated that "[w]ithout evidence to support his findings, the ALJ was not in a position to make an RFC determination." Fleetwood, 211 F. App'x at 740. Because it found the ALJ's RFC assessment was not based on substantial evidence, the court remanded for further administrative proceedings. Id. at 741. This court will not require the ALJ to recontact treating medical sources nor to obtain a consultative evaluation on remand. That is for his determination in the first instance. He is competent to make it based upon the regulations and the evidence available on remand.

As discussed above, in the decision at issue here the ALJ found that Plaintiff has a combination of severe impairments and also has depression which is not severe, he summarized the record evidence and Plaintiff's testimony, and he explained why he found

12

Plaintiff's allegations of symptoms "not entirely credible." (R. 18-23). Then, he stated a one-sentence conclusion that "[a]fter a thorough review of the evidence of record, . . . the undersigned finds the claimant capable of performing work consistent with the residual functional capacity established in this decision." (R. 23). The ALJ did not describe how the evidence supports each RFC conclusion, discuss how Plaintiff is able to perform sustained work activities, nor describe the maximum amount of each work activity the plaintiff can perform.

Therefore, this case must be remanded and the Commissioner must make a proper explanation such that the Plaintiff and any reviewing court will know the rationale used to reach the decision, and will be able to determine whether substantial evidence in the record supports the decision. In 2004 in a case quite similar to this, Judge Belot of this district explained the shortcomings of the ALJ's analysis both there and here: "the ALJ simply listed all the evidence contained in the record and then set forth his conclusion without explaining the inconsistencies and ambiguities contained in the opinions. He did not connect the dots, so to speak, as is required by S.S.R. 96-8p." Kency v. Comm'r of Soc. Sec., Civ. A. No. 03-1190-MLB, 2004 WL 5542829 at *4 (D. Kan. Nov. 19, 2004). Later in his opinion Judge Belot suggested how the shortcomings should be corrected:

> Most important, the ALJ must explain how the decision was reached. When an ALJ merely summarizes the facts, notes that he has considered all of the facts, and then announces his decision, there is nothing for the court to review. The court cannot know how the ALJ analyzed the evidence. When the evidence is contradictory or ambiguous, as it is in most cases, the court cannot know which evidence was given what weight, or how the ambiguities were resolved. Therefore, to determine whether substantial

13

>evidence supports the conclusion, the court would have to reweigh the evidence. Since that option is precluded by law, the court can only remand to the defendant for a proper explanation of how the evidence was weighed and ambiguities resolved.

Id. The court does not require that the decision include an item-by-item discussion of each RFC limitation with an explanation of the evidence relied upon to support that particular limitation, but the decision must explain how the ambiguities were resolved and reveal the evidentiary basis of and rationale for the RFC assessed.

The decision at issue here illustrates both a finding that is reviewable by the court because it provides a narrative discussion which relates the finding to the evidence and explains the finding; and a finding that is not reviewable by the court because it does not provide a narrative discussion which relates the finding to the evidence, nor explains the finding. The credibility finding here would be reviewable by the court. In discussing that finding, the ALJ stated the legal standard which applied, summarized Plaintiff's allegations, and stated his finding that Plaintiff's allegations "are not entirely credible." (R. 21-22). Then in five paragraphs over the next page-and-a-half, the ALJ stated six reasons for his credibility finding ((1) Plaintiff testified to greater limitations than she reported to medical sources; (2) on April 26, 2002 Dr. Hsu found Plaintiff's symptoms were not consistent with her MRI; (3) Plaintiff was working part-time as an instructor; (4) Plaintiff's daily activities are inconsistent with her allegations; (5) Plaintiff's use of over-the-counter pain medication is inconsistent with her allegations; and (6) Plaintiff's pain relates mostly to being overweight). (R. 22-23). In that narrative he also related his

reasons to the record evidence. Plaintiff claims the credibility analysis is erroneous because the ALJ relied "too heavily" on Plaintiff's daily activities, and failed to consider Plaintiff's past work history or her consistent attempts to obtain pain relief. Because this decision must be remanded in any case, the court need not and does not decide whether the credibility finding is erroneous. However, the point is that the credibility finding is reviewable because the court can determine whether the ALJ applied the correct legal standard, and can review the ALJ's rationale and the evidence relied upon and determine whether substantial evidence in the record supports the finding.

On the other hand, the remainder of the ALJ's RFC assessment is unreviewable because the ALJ merely summarized the evidence and did not explain his rationale for the RFC assessed, did not state the weight accorded to the medical opinions, did not resolve ambiguities and material inconsistencies, and did not relate his specific RFC findings to the record evidence. As in Kency, the only way the court might determine whether the RFC assessed is correct would be to weigh the evidence itself and to provide a post hoc rationalization for the ALJ's finding. However, as Judge Belot noted in the Kency decision, that option is precluded by law. Bowman, 511 F.3d at 1272 (The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."); accord, Hackett, 395 F.3d at 1172; Knipe, 755 F.2d at 149 n.16 (decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action); Grogan, 399 F.3d at 1263 (court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence). The court's assessment is further confirmed by

the fact that in the Commissioner's brief supporting the ALJ's RFC assessment, the only rationale addressed are the ALJ's reasons for discounting the credibility of Plaintiff's allegations. (Comm'r Br. 5-11).

The court also notes that the ALJ's discussion regarding Plaintiff's medically determinable impairments is unclear and should be clarified on remand. Plaintiff points to evidence that she was diagnosed with degenerative osteoarthritis of the knees. (Pl. Br. 6, 12-13) (citing (R. 196)). She argues that the ALJ did not consider her degenerative osteoarthritis or depression in his RFC assessment. The Commissioner argues that the ALJ properly considered the severity of Plaintiff's impairments.

The ALJ properly stated the rule that in making an RFC assessment, he "must consider all of the claimant's impairments, including impairments that are not severe." (R. 17). Moreover, he stated that in his RFC assessment he considered "the entire record" (R. 19), and made "a thorough review of the evidence of record." (R. 23). As a general practice, the court will "take a lower tribunal at its word when it declares that it has considered a matter." Hackett, 395 F.3d at 1173. However, in this case, the court believes the better course is to remand for consideration of the severity and effect of Plaintiff's impairments on her RFC.

As Plaintiff argues, the record contains evidence that she was diagnosed with degenerative osteoarthritis of the knees, and that she receives injections in her knees to aid in pain relief. In his step two and step three analyses, the ALJ made no mention of Plaintiff's knees, and the decision contains no discussion of degenerative osteoarthritis of

16

the knees. (R. 18-19). Although the ALJ discussed knee pain and Plaintiff's recurring injections, there is no indication the ALJ recognized osteoarthritis of the knees as a medically determinable impairment in this case. An ALJ must consider all medically determinable impairments in assessing RFC, but if he did not recognized osteoarthritis of the knees as a medically determinable impairment, he could not find that it affected Plaintiff's RFC. 20 C.F.R. § 404.1545. Moreover, the Commissioner does not even acknowledge that osteoarthritis of the knees is a medically determinable impairment in this case or that the ALJ considered it in assessing Plaintiff's RFC; his only argument is that the ALJ properly considered the severity of Plaintiff's depression. (Comm'r Br. 4-5). Therefore, remand is necessary for the Commissioner to consider whether osteoarthritis of the knees is a medically determinable impairment in this case and, if so, what effect, if any, it has on Plaintiff's RFC.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is REVERSED, and that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case for further proceedings consistent with this opinion.

Dated this 20th day of June 2011, at Kansas City, Kansas.

s:/ John W. Lungstrum  
**John W. Lungstrum**  
**United States District Judge**